IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| *Sparrow Barns & Events, LLC,* § § | |
| Plaintiff, § § | |
| § | Civil Action No. |
| v. § § | |
| § | Jury Trial Requested |
| *The Ruth Farm Inc.*, § § | |
| Defendant. § | |

## COMPLAINT

Plaintiff Sparrow Barns & Events, LLC (hereinafter "Plaintiff") alleges the following causes of action against Defendant The Ruth Farm Inc. ("the Nest" or "Defendant"):

### I. PRELIMINARY STATEMENT

1. Plaintiff reinstitutes this action seeking declaratory and monetary relief for

    a) Defendant's willful infringement of Plaintiff's copyright in Plaintiff's architectural work, Barn A-1-A-5 (the "Copyrighted Work"),

    b) Defendant's willful infringement of Plaintiff's interior trade dress, and

    c) Defendant's breaches of the executed settlement agreement reached during court-ordered mediation in the original matter, which was voluntarily dismissed *without* prejudice.

2. Plaintiff Sparrow Barns & Events LLC is the owner of The White Sparrow®, a wedding and event venue located in Quinlan, Texas.

3. Plaintiff is a family-owned and family-run business. Planning, design, and construction of The White Sparrow venue was a family endeavor. Nadia Ramos, a managing

member of Plaintiff, dreamed of a custom-designed, innovative facility that would be constructed by her father, a general contractor.

4. Mrs. Ramos and her mother, Wanna Huerta, invested substantial amounts of time, labor, and creativity in the design of The White Sparrow and that investment culminated in the construction of The White Sparrow by Mrs. Ramos' father, John Huerta. From the concept to design, to the planning, to the labor and to the construction, this was a family endeavor.

5. Defendant, seeking to ride on the coattails of Plaintiff's success without having to expend the same time, money, and labor, intentionally replicated the Copyrighted Work and infringed Plaintiff's trade dress. From conniving a false wedding in order to gain access to the venue to take photographs and notes, to physically threatening the owners of Plaintiffs, Defendant's actions demonstrate the willful nature of its replication and infringement.

6. After numerous instances of consumer confusion, Plaintiff instituted civil action no. 4:17-CV-00558 in this District on August 10, 2017.

7. In good-faith, Plaintiff attempted to resolve this matter at the ordered mediation, which occurred on April 17, 2017. A Settlement Agreement (the "Agreement") was reached among the Parties during the mediation.

8. Pursuant to the executed Agreement, Defendant was required to make certain agreed-upon changes to its venue by January 1, 2019, and was to notify Plaintiff within seven days from that time that it had complied with its obligations under the Agreement.

9. After silence from Defendant as to whether it had complied with the Agreement, Plaintiff learned that Defendant had indeed breached its obligations under the Agreement and had failed to make the required changes to its venue. Pursuant to the terms of the Agreement, Plaintiff reinstituted its original lawsuit against Defendant, with a breach of contract claim.

## II. THE PARTIES

10. Sparrow Barns & Events LLC is a limited liability company duly organized in the State of Texas. Sparrow Barns & Events LLC's primary place of business is located at 7950 County Rd 2412, Quinlan, Texas 75474.

11. Defendant The Ruth Farm Inc. is a domestic for-profit corporation incorporated in the State of Texas. Defendant regularly conducts business in Texas and may be served with process through its registered representative for service, Christopher Thompson, at 3275 Creekside Drive, Ponder, Texas 76259.

## III. FACTUAL ALLEGATIONS SUPPORTING CLAIMS FOR RELIEF

12. This is an action for copyright infringement under 17 U.S.C. § 501, trade dress infringement and federal unfair competition under 15 U.S.C. § 1125 (a), and breach of contract pursuant to Texas state law.

13. Plaintiff Sparrow Barns & Events LLC owns The White Sparrow barn, a wedding and event venue located in Quinlan, Texas. The White Sparrow opened nearly five years ago, in March, 2014.

14. The White Sparrow is an internationally renowned wedding venue that has been repeatedly recognized as one of the top wedding venues in America. Brides travel from across the United States and from overseas to have their wedding at The White Sparrow. Many brides have booked The White Sparrow after seeing photographs of the venue online.

15. The White Sparrow has been voted one of the best venues in America by Brides Magazine. It has been featured and showcased in numerous media and print publications, including *CountryLiving, the knot, the Magnolia Journal, ModWedding, Brides.com, Trendy Bride, Southern Weddings, CultureMap Dallas, Adorn*, and many others.

16.     The Grand Hall of the venue is the most photographed interior location at the venue. It has been used by celebrities, such as Joanna Gaines, and corporations, such as JCPenney for commercial photography shoots and events. The Grand Hall is the most advertised room in The White Sparrow.

17.     The White Sparrow has over 30,000 followers among its various social media accounts and approximately 70,000 monthly views of its Pinterest page, on which the architectural structure and trade dress of the venue is frequently showcased. The venue is instantly recognizable to consumers in the relevant market.

18.     Defendant The Ruth Farm, Inc. is the owner of a competing venue named the Nest, which is located in Ponder, Texas. Defendant's opened its venue recently, in the summer of 2017.

19.     Defendant began constructing its replicated venue in the spring of 2017, with a planned opening date of summer 2017.

20.     In planning and constructing its venue, Defendant intentionally replicated the Copyrighted Work and the trade dress of The White Sparrow.

21.     The Copyrighted work is protected as an architectural work under the United States Copyright Act. An "architectural work" is "the design of a building as embodied in any tangible medium of expression, *including in a building*, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design…" 17 U.S.C § 101.

22.     Sparrow Barns & Events LLC is the owner, by assignment, of Copyright VAu-1-203-507. A copy of the Certificate of Registration for Copyright VAu-1-203-507 is attached hereto as Exhibit A.

23. Defendant built its venue within ninety miles of The White Sparrow®. Defendant offers the same services, targets the same consumers, and advertises through the same marketing outlets as The White Sparrow®. Both operate within the wedding industry and cater to the same market.

24. Defendant, through its authorized agents and representatives, contrived a false wedding to gain direct access to The White Sparrow.

25. On June 29, 2016, Courtney Wood, daughter of Christopher and Lawanna Thompson (owners of Defendant), sent an email to the White Sparrow requesting a tour. She stated that she had an "upcoming wedding" in "February or March," that she had previously been inside the venue for another wedding and that she had "*[fallen] in love with it*."

26. The White Sparrow arranged for Ms. Wood and the Thompson family to take a private, guided tour of the venue on July 14, 2016.

27. The Thompson family was provided a tour of the venue and during that tour, multiple photographs of the venue and notes were taken. During the tour, Mr. Thompson wandered away from the tour group to view other areas of the venue. Once the manager pointed this out and asked Mr. Thompson to rejoin the tour, Mr. Thompson returned.

28. Public records show that Courtney Wood has never been married and that she did not hold a wedding in February or March of 2017. Her false statement regarding her "upcoming wedding" was made simply under the pretense of gaining access to The White Sparrow in advance of the Thompsons creating their replicated venue.

29. On February 19, 2017, the White Sparrow held an open house for the public and interested vendors. The unscrupulous behavior of the Thompsons continued, as Christopher and Lawanna Thompson were again present at the venue scheming to gain further information.

30. John Huerta, who managed the construction of the venue, was present at the open house event. During the event, Mr. Thompson sought him out and asked very pointed questions as to how exactly the venue was constructed.

31. Mr. Thompson specifically inquired how the columns in the great hall were constructed. He also asked if the venue was refurbished or constructed from scratch, how long the buildout took, and where the wood used was sourced from.

32. Though several areas of the venue were closed to the public for the event, Mr. Thompson snuck into and viewed these closed-off areas of the venue, such as the catering kitchen. When Mr. Thompson was advised he needed to leave the area by The White Sparrow manager, he became exceedingly defensive and angry and stated that he was "just looking around."

33. Due to past experience with Mr. Thompson during the tour with the Thompsons held in July of 2016, The White Sparrow manager became suspicious of Mr. Thompson's motives. Due to those suspicions, he responded to Mr. Thompson's comment that the barn was subject to copyright protection and that it could not be replicated. Mr. Thompson angrily exclaimed he "was not trying to build a barn" and abruptly left the premises, taking his wife with him.

34. Defendant further had access to the Copyrighted Work through Plaintiff's social media accounts, which routinely post photographs of the Copyrighted Work's exterior and interior features and interacted with those accounts.

35. At all relevant times, Defendant had notice that the Copyrighted Work was protected by United States Copyright registration. Though a disclaimer is not required, a disclaimer regarding the copyright is posted on Plaintiff's website and social media accounts. Mr. Thompson was also verbally instructed in person at the February 2017 open house that The White Sparrow is protected by copyright.

36. Despite those expressed warnings, Defendant moved forward with its scheme to directly replicate the Copyrighted Work and to copy The White Sparrow's interior trade dress.

37. Once Defendant's venue was constructed, consumer confusion immediately ensued. *See* Exhibit B. These instances of confusion alerted Plaintiff to the fact that Defendant had constructed a replicated venue.

38. In one instance of reverse confusion, a professional photographer took photographs at both The White Sparrow and Defendant's competing venue.

39. The photographer posted photographs of a venue to her Instagram account. The accompanying caption and hash-tags told the public that the venue was The White Sparrow. However, the photographs were actually of the Nest. Even a professional photographer was unable to distinguish the interior of the two venues in her own photographs.

40. Instances of consumer confusion continued. In this technological age, wedding venues advertise online. Social media activity is tantamount for brand recognition and sales. Brides often choose venues based on photographs alone and venue photographs are widely circulated and displayed on websites like Pinterest and Instagram and from wedding industry specific websites such as www.theknot.com.

41. Weddings have become big business. The wedding industry was estimated to be worth $72 billion in 2017, according to a comprehensive industry market research conducted by IBISWorld. Both venues in this suit often charge in excess of $8000.00 per night for rental and more for commercial shoots.

42. Due to the instances of consumer confusion, Plaintiff issued a cease and desist letter to Defendant on June 28, 2017, urging Defendant to cease its copyright and trade dress infringement. Defendant responded to Plaintiff's letter with a flippant denial of its actions. Plaintiff

responded, outlining several of the facts regarding the plotting of the Thompson family and regarding consumer confusion. Defendant failed to respond to the second letter, despite representations that it would respond.

43. In light of the non-response, Plaintiff filed the original lawsuit in this matter on August 10, 2017.

44. This Court ordered Plaintiff and Defendant to mediate the claims involved in the original action by April 20, 2018.

45. In good-faith, on April 17, 2018, Plaintiff and Defendant selected the Hon. Jeff Kaplan (Ret.) as mediator and paid the mediator's required fees. An Agreement was reached among the Parties at mediation.

46. Pursuant to the executed Agreement, Defendant was required to make certain agreed-upon changes to its venue by January 1, 2019 and was to notify Plaintiff within seven days from that it had complied with its obligations under the Agreement.

47. Defendant failed to honor the Agreement that it signed. Defendant did not make the changes required by the Agreement by January 1, 2019.

48. As of January 19, 2019, Defendant still had not honored the Agreement and made the changes it agreed to. *See* Exhibit C.

49. Due to Defendant's actions prior to and during the original lawsuit, Plaintiff ensured that the Agreement reserved a right for it to reinstitute its lawsuit against Defendant, with a breach of contract claim, in the event that Defendant breached.

50. Therefore, Plaintiff brings this action for copyright infringement to stop Defendant's infringement of its rights. Defendant has unlawfully reproduced Plaintiff's protected

architectural work. Defendant is not authorized to use any of the exclusive rights which Plaintiff holds as the owner of the copyright.

51. Defendant has further infringed Plaintiff's trade dress, and engaged in unfair competition under the Lanham Act and the common law of the state of Texas, by directly adopting and using Plaintiff's interior trade dress. *See* Exhibit D.

52. Defendant further materially breached the Agreement reached by the Parties pursuant to mediation in this matter and willfully remains in breach of that Agreement. *See* Exhibit C.

## IV.    JURISDICTION AND VENUE

53. This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*. (the "Copyright Act") and for trade dress infringement arising under 15 U.S.C. § 1125 (the "Lanham Act"). The Court has subject matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338 and supplemental jurisdiction over the state law claims under U.S.C. § 1367.

54. Venue is proper in this District under 28 U.S.C §§ 1391 (b) and 1400 because Defendant resides, transacts business, may be located, and is subject to personal jurisdiction here.

## V.    FIRST CAUSE OF ACTION
### DIRECT INFRINGEMENT UNDER 17 U.S.C. § 501

55. Plaintiff repeats and realleges the allegations in paragraphs 1-14

56. Plaintiff is the owner of the architectural work that is subject of this action and the owner of the registered copyright. Under 17 U.S.C. § 106, Plaintiff holds the exclusive rights, among others, to reproduce the work and prepare derivative works based upon the work.

57. Defendant is directly infringing Plaintiff's copyright in violation of 17 U.S.C. § 501. Defendant the Nest has reproduced, prepared a derivative, and made other infringing uses of

the architectural work, without authorization and in direct contradiction of instructions provided to Defendant by Plaintiff.

58. Defendant the Nest's acts are willful, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiff;

59. Because of its conduct, Plaintiff has suffered damages and Defendant the Nest is liable to Plaintiff for copyright infringement.

## VI.   SECOND CAUSE OF ACTION
### FEDERAL TRADE DRESS INFRINGEMENT, FALSE DESIGNATION, AND UNFAIR COMPETITION

60. The allegations in the preceding paragraphs of this Complaint are hereby restated and incorporated by reference.

61. Plaintiff independently created nonfunctional, distinguishing design features which comprise the unique look of The White Sparrow interior Grand Hall.

62. The White Sparrow's trade dress includes the custom-framed, vaulted ceiling beams, the rustic whitewashing of the Grand Hall, the ornate, tiered candelabra chandeliers, the placement of the lighting fixtures, the selective back wall window design and placement, and the stylistic, wrapped vertical columns. These combined elements constitute the interior trade dress.

63. The trade dress is nonfunctional and identifies The White Sparrow to its customers and the relevant market.

64. Defendant has intentionally and deliberately manufactured, adopted, distributed, and used in commerce The White Sparrow's trade dress.

65. Defendant's intentional use of Plaintiff's trade dress constitutes the use in commerce of false designation of origin, false or misleading descriptions of representations that are likely to cause confusion and mistake and to deceive consumers as to the source of origin of Defendant's venue or the affiliation, connection, or association of Defendant with Plaintiff

Sparrow or the sponsorship or approval of Defendant's venue by Plaintiff and constitute trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 (a).

66. Defendant the Nest's acts, as described above, are likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Defendant the Nest with Plaintiff or as to the origin, sponsorship, or approval of Defendant's services and commercial activities by Plaintiff, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

67. The acts of unfair competition undertaken by Defendant, as detailed above, are deliberate and willful and have been undertaken with the intent to misappropriate the goodwill and reputation associated with The White Sparrow.

68. Defendant's acts of infringement have caused monetary damage to Plaintiff in amount that cannot be ascertained at this time, but that is in excess of $75,000.

## VII. THIRD CAUSE OF ACTION
### COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

69. The allegations in the preceding paragraphs of this Complaint are hereby restated and incorporated by reference.

70. Defendant the Nest's conduct and actions set forth above constitute trade dress infringement in the various distinctive design features of Plaintiff's trade dress and unfair competition pursuant to the common and statutory law of the state of Texas.

71. Because of such infringement and unfair competition, Plaintiff has suffered damages, including lost sales and lost profits and injury to its business reputation and goodwill associated with its trade dress.

## VIII. FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT

72. During the ordered mediation in the original lawsuit in this matter, Plaintiff and Defendant reached an agreement to settle the original lawsuit. Plaintiff and Defendant executed a valid Settlement Agreement on May 23, 2018.

73. Plaintiff tendered performance under the Agreement.

74. Defendant materially breached the Agreement by failing to fulfill its contractual obligations.

75. The Agreement required Defendant to make changes to its venue, including an agreed-upon change to its back window structure, and it required Defendant to complete the outlined changes by January 1, 2019.

76. The Agreement specifically reserved Plaintiff's right to reinstitute its claims against Defendant in the event that Defendant breached.

77. Once the Agreement was executed by the Parties, the original lawsuit was dismissed with prejudice on May 31, 2018.

78. Defendant materially breached the Agreement by failing to make the required changes to its venue by January 1, 2019.

79. As a result of Defendant's breach, Plaintiff has suffered damages. Plaintiff is entitled to recovery of its attorney's fees on its breach of contract claim pursuant to Tex. Civ. Prac. & Rem. § 38.001 and pursuant to the terms of the settlement agreement.

**JURY TRIAL DEMAND**

80. Plaintiff hereby requests trial by jury.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

    a. enter judgment against Defendant finding that it has infringed Plaintiff's rights in the Copyrighted Work and order Defendant to remit payment of maximum statutory damages of $150,000 per work infringed under 17 U.S.C. § 504 (c), or alternatively, Plaintiff's actual damages and the profits of Defendant the Nest that are attributable to the violations alleged herein pursuant to 17 U.S.C. 504 (b);

    b. enter judgment against Defendant finding that it has infringed Plaintiff's trade dress under the Lanham Act and order payment of damages pursuant thereto;

    c. enter judgment against Defendant finding that it has engaged in unfair competition under the Lanham Act and order payment of damages pursuant thereto;

    d. enter judgment against Defendant finding that it has engaged in unfair competition and trade dress infringement under the Texas common law and award damages pursuant thereto and order payment of damages pursuant thereto;

    e. enter judgment enjoining Defendant and its respective officers, agents, employees, directors, or any one purporting to act on its behalf from any and all use Plaintiff's trade dress;

    f. enter judgment enjoining Defendant and its respective officers, agents, employees, directors, or any one purporting to act on its behalf from any and all use of Plaintiff's copyright;

    g. order prejudgment interest on the amount of any award to Sparrow;

    h. award Plaintiff its reasonable attorneys' fees incurred in this action pursuant to § 505 of the Copyright Act, Tex. Civ. Prac. & Rem. § 38.001, and the Settlement Agreement; and

    i.   grant Plaintiff such other and additional relief as is just and equitable.

                         Respectfully Submitted,

                         */s/ Chelsie N. Spencer*
                         Chelsie N. Spencer
                         Texas Bar No. 24094959

                         **RITTER SPENCER PLLC**
                         15455 Dallas Parkway, Suite 600
                         Addison, Texas 75001
                         Email: cspencer@ritterspencer.com
                         Telephone: 214.295.5070
                         Fax: 214.935.1778

                         ATTORNEYS FOR PLAINTIFF
                         SPARROW BARNS & EVENTS LLC